# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COURTNEY HOLLADAY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CME GROUP, CHICAGO MERCANTILE )<br>EXCHANGE, INC., CHICAGO BOARD OF )<br>TRADE, MWD TRADING, INC. and MARK )<br>DOWNS, )<br>    Defendants. ) | Case No. 11 cv 8226<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Courtney Holladay brings a claim for retaliation against defendants CME Group, Inc., Chicago Mercantile Exchange, Inc., and the Board of Trade of the City of Chicago, Inc. (collectively, "CME defendants"), and claims for sexual harassment, sex discrimination, retaliation, assault and battery, and intentional infliction of emotional distress against defendants MWD Trading and Mark Downs. All defendants now move for summary judgment. For the following reasons, CME defendants' motion is granted and Downs' motion is respectfully denied.

**Background**

The following relevant facts are undisputed except where noted. Defendant Mark Downs leases a Chicago Mercantile Exchange ("CME") membership and is a trader in the Cattle pit of the Chicago Board of Trade. In 2008, Downs hired Holladay as a non-member employee. Neither Holladay nor Downs were employees of CME Group at any time. Holladay alleges that Downs sexually harassed her beginning in March 2008 and continuing throughout her employment. Holladay resigned or was laid off and re-hired several times before she was ultimately terminated in November 2010.

Holladay claims Downs groped her, showed her his erect penis, grabbed her buttocks, reached under her shirt and brushed up against her nipples, asked for sexual favors and called her inappropriate nicknames. Downs allegedly made advances toward Holladay in the trading pit in front of pit reporters and security. According to Holladay, she complained to at least five pit

1

reporters about Downs' conduct but nothing was done to stop it. In August 2008, during a period in which Holladay was not employed by Downs, the two had sex at Downs' house. Shortly thereafter, Holladay was re-hired. Holladay asserts that Downs conditioned her re-employment on having sex with him.

CME Group is a publicly traded holding company and parent company of the CME and the Chicago Board of Trade ("CBOT"). CME and CBOT operate under the oversight of the US Commodity Futures Trading Commission and pursuant to the Commodity Exchange Act. Accordingly, they are empowered to, among other things, "establish and enforce disciplinary procedures…to discipline…members or market participants that violate the rules of the board of trade…" (Dkt. #89, CME Stmt. of Facts, ¶2.) Pursuant to this authority, they have established rules for CME members and non-member employees.

CME Group's Market Regulation department monitors and enforces CME rules. Rule violations are investigated and enforced by the Investigations and Enforcement groups. At the conclusion of an investigation, the Investigations group generates a report with factual findings and recommendations for whether charges should be pursued against an individual. If charges are recommended, the matter is referred to the Enforcement group which makes the decision whether to pursue charges. Proposed charges are presented to the CME Probable Cause Committee ("PCC") which is responsible for determining whether to hold the individual liable for the alleged charges.

In November 2010, Market Regulation, through its Investigations and Enforcement groups, was in the midst of investigating trading activity in the Cattle pit. On November 11, 2010, Investigator Aaron Nessel viewed video footage from May 14, 2010 and saw Downs apparently put his right hand down the front of Holladay's shirt while giving her a hug with his left hand. Investigator Urmi Graft also viewed the video and confirmed what Nessel had seen. Nessel and Graft consulted with Associate Director of Investigations, Greg Benbrook, and Associate Director of Enforcement, Andrew Vrabel, and an investigation into Downs' conduct was opened on November 16, 2010.

In late November, Nessel, Graft and Benbrook met and developed a plan for the Downs investigation. The parties dispute whether it was decided at that time or at a later date to interview Holladay. On November 29, 2010, Nessel and Graft interviewed Downs. Downs allegedly gave conflicting accounts of what was he was doing in the video and claimed that he

had a consensual on-and-off intimate relationship with Holladay. Downs ultimately admitted that he had put his hand down Holladay's shirt. Member trader Robert Piatkowski and another of Downs' non-member clerks, Alec Lehmann, appeared in the footage in the vicinity of Downs and Holladay and were interviewed on December 1, 2010 and January 5, 2011, respectively.

In a letter dated December 22, 2010, Scott Fanning, counsel for Holladay, requested Holladay's personnel file from CME Group, and attached an attorney's lien. The attorney's lien states, in relevant part:

> Courtney Holladay has placed in my hands as her attorney for suit or collection a claim, demand or cause of action against you growing out of illegal and improper discrimination against her and/or harassment of her by you, during her employment with you and continuing until the present. (Dkt. #103-6, Holladay App. of Ex., p. 3.)

Counsel for CME Group, Janet Troyke, responded on December 27, 2010 and January 13, 2011 requesting clarification of Holladay's alleged claims. Troyke further advised that Holladay was not employed by CME Group.

Holladay filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") against CME Group on January 19, 2011. On January 25 and February 3, Graft sent letters to Holladay requesting her in-person interview. According to Holladay, the letters were sent to one of her previous addresses and she did not receive them.

On February 15, Troyke emailed Fanning to advise him of Market Regulation's request to interview Holladay. Fanning replied on February 18, and inquired as to the specifics of the investigation and consequences if Holladay did not give an interview. That same day, Troyke, Fanning and Vrabel held a conference call at which time Vrabel explained that Holladay was not a CME Group employee but, as a non-member employee, was subject to the CME rulebook. Vrabel also stated that Holladay's interview was sought in relation to the Downs investigation. Vrabel further advised that the CME rulebook was binding on Holladay and she could be subjected to fines up to one million dollars. Fanning told Tryoke and Vrable that Holladay had filed a charge with the IDHR. The parties dispute whether CME Group was previously aware of Holladay's IDHR charge.

On February 28, Graft sent another request for Holladay's in-person interview. On March 4, Fanning responded that Holladay would not submit to a "free deposition" but would respond in writing to up to 25 written questions. (Dkt. #90-7, CME App'x of Ex., p. 23.) Vrabel reiterated

3

the need to interview Holladay in-person with respect to the Downs investigation. (*Id*. at pp. 25-26.) In a letter dated March 18, Fanning indicated Holladay was willing to reconsider her position regarding an oral interview. (*Id*. at pp. 28-29.) Nevertheless, Nessel and Graft, in consultation with Benbrook and Vrabel, subsequently prepared a report recommending a charge against Holladay for refusing to submit to an in-person interview in violation of CME Rule 432.L1. Holladay disputes that she refused the interview. On March 29, Market Regulation filed a Notice of Charges with the PCC requesting that charges issue against Holladay for failing to comply with their request for an interview. Charges were issued the same day. Holladay did not respond to them and, as a result, the charges were admitted.

The Downs investigation concluded on March 22, 2012 without Holladay's interview. Downs was ultimately fined $10,000 for his conduct and suspended from the trading floor for ten days. Holladay was ultimately reprimanded for failing to cooperate with the Downs investigation but no fines or restrictions were levied against her or her ability to work at any of the CME Group designated contract markets.

Holladay filed her second amended complaint on August 24, 2012. Counts I-III allege claims of sexual harassment, sex discrimination and retaliation against Downs and MWD Trading, Inc., in violation of Title VII of the Civil Rights Act 42 U.S.C. § 2000e as amended, ("Title VII") and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5 *et seq*., respectively Counts VI-VII allege claims of assault and battery and intentional infliction of emotional distress against Downs and MWD Trading, Inc., respectively. Count IV alleges a claim of retaliation against CME defendants pursuant to the IHRA.[1] All defendants now move for summary judgment.

**Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court construes the facts and all reasonable inferences in the light most favorable to the nonmoving party when deciding a motion for summary judgment. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir.2005). In considering a motion for summary judgment, the Court may

---

[1] Count V of Holladay's amended complaint alleged a claim against CME defendants pursuant to Section 22(b) of the Commodities Exchange Act which was dismissed on November 16, 2012. (Dkt. #42, Opinion and Order.)

4

not weigh the evidence or engage in fact-finding, but should simply determine whether there is a genuine issue for trial. *Hasan v. Foley & Lardner*, LLP, 552 F.3d 520, 527 (7th Cir. 2008).

The moving party bears "the initial responsibility of informing the...court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Id*.at 324.

**Discussion**

*1. CME Defendants' Motion for Summary Judgment*

As a preliminary matter, CME defendants urge the Court to strike Holladay's Rule 56.1 Response Statement of Facts. Local Rule 56.1 requires an opposing party to file "a concise response" to the movant's statement of facts. L.R. 56.1(b). CME defendants argue Holladay's response contains improperly long narratives, arguments and additional facts. The Court finds Holladay's Response Statement of Facts is largely non-complaint in these respects, (*see*, *e.g.*, Dkt. #102, Pl.'s Resp. Stmt. of Facts, ¶¶5, 10, 14, 30, 32), and will therefore disregard Holladay's responses to the extent they are improper.

Count IV of Holladay's amended complaint alleges CME defendants retaliated against her in violation of the IHRA for filing a charge with the IDHR. CME defendants argue they are entitled to summary judgment because Holladay cannot establish a prima facie showing of retaliation.

To establish a prima facie case of retaliation, Holladay must show that: (1) she was engaged in a protected activity; (2) CME defendants committed a material adverse act against her; and (3) a causal nexus existed between the protected activity and the adverse act. *Hoffelt v. Illinois Dep't of Human Rights*, 367 Ill. App. 3d 628, 634 (Ill. App. Ct. 2006). Employment discrimination claims under the IHRA are analyzed using the same framework as claims under Title VII. *Id*. (cit*ing Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill.2d 172, 178–79 (1989)); *see also Owens v. Dep't of Human Rights*, 403 Ill. App. 3d 899, 918 (Ill. App. Ct. 2010). Materially adverse actions are those that might dissuade a reasonable employee from engaging in protected activity. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

5

Indeed, "a broad array of actions may constitute an adverse employment action, including such employer acts as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or some other action causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). However, retaliation claims are not limited to actions that affect an employee's terms and conditions of employment. *White*, 548 U.S. at 68; *Washington v. Illinois Department of Revenue*, 420 F.3d 658, 660 (7th Cir. 2005) (recognizing that Title VII retaliation claims make take many forms and is broader than Title VII discrimination claims, which are "limited to discrimination with respect to the worker's compensation, terms, conditions, or privileges of employment").

"[T]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 68. Thus, a plaintiff alleging retaliation must show "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. Trivial harms, petty slights and minor annoyances generally do not qualify. *Id*.

Holladay claims two protected activities: her attorney's lien[2] dated December 22, 2010, and her IDHR charge filed on January 19, 2011. While CME defendants do not dispute that Holladay's IDHR charge constitutes protected activity, they argue an attorney's lien is not protected activity under the IHRA and, even if it is, the lien is too vague to warrant any inference that they knew that Holladay intended to file an IDHR charge. The Court agrees.

Holladay's amended complaint further alleges that CME defendants retaliated against her when Market Regulation (a) sought her in-person interview, (b) threatened her with fines up to one million dollars and (c) ultimately charged and reprimanded her. CME defendants argue that none of the alleged actions taken against Holladay are materially adverse.

First, CME defendants assert that "Market Regulations is specifically authorized to investigate potential rule violations and to require individuals to submit to in-person interviews." (Dkt. #88, CME Mem. in Supp. of Mot. for Summ. J., p. 9.) According to CME defendants, the interview was made pursuant to that authority and in furtherance of their investigation of Downs'

---

[2] The Court notes that Holladay asserts for the first time in her response brief that the "first protective activity that CME was aware of was Plaintiff's attorneys' lien that stated Plaintiff intended upon pursuing and [sic] employment discrimination and harassment claim against the CME." (Dkt. #100, pp. 8-9.)

6

alleged inappropriate conduct. In her response brief, Holladay abandons her allegation that requesting an interview was a materially adverse action.

Next, CME defendants dispute that Holladay was ever threatened with a one million fine and that this allegation therefore cannot support her retaliation claim. Indeed, the Court finds no support in the record for Holladay being threatened with a one million dollar fine. The parties do not dispute that Vrabel advised Fanning of a possible one million dollar fine during the February 18 conference call if Holladay refused the interview. In a letter sent the same day, Fanning inquired as to Holladay's rights and obligations, whether she had to agree to the interview and the consequences of refusing the interview. (Dkt. #90-2, CME App'x of Ex., p. 57.) In response, Troyke stated that Holladay "may be subject to disciplinary action if she refuses to comply with Market Regulation's request for an interview, pursuant to CME Rule 432.L," and provided Chapter 4 of CME's rulebook. (*Id.* at p. 60.)

Rule 432.L1 states it is an offense "to fail to appear before the Board, Exchange staff or any investigative or hearing committee at a duly convened hearing, scheduled staff interview or in connection with any investigation. (Dkt. #89, ¶15.) Rule 402.B lists seventeen potential sanctions which may be imposed against a party who violates a rule, one of which is a fine "not to exceed $1,000,000 per violation." (*Id.* at ¶16; http://www.cmegroup.com/rulebook/CME/, at Chapter 4, Enforcement of Rules.) The allegation that Holladay was threatened with a one million dollar fine appears to be a speculative characterization of these communications.

Finally, CME defendants argue that Market Regulation's decisions to charge and reprimand Holladay do not constitute real harm as it was not accompanied by any monetary fine nor did it prevent Holladay from working for CME or any member on the trading floor. It is true that reprimands unaccompanied by any immediate consequences are generally not materially adverse. *See, e.g., Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001) ("a letter of reprimand is not an adverse employment action unless the letter is accompanied by some other action, such as job loss or demotion"). However, as the Supreme Court declared, "the significance of any given act of retaliation will often depend upon the particular circumstances." *White*, 548 U.S. at 55.

Here, the Court notes that Market Regulation's investigation of Downs and their request to interview Holladay arise out the same essential allegations contained in Holladay's instant complaint: Downs' conduct towards Holladay in the trading pit. It cannot be disputed that

Downs was in a position of authority over Holladay. Based on CME defendants' position that Holladay was not their employee but was still subject to the CME's rules and sanctions, CME defendants were arguably also in a position of authority over Holladay. While not all employer action is materially adverse, the Court finds that a reasonable employee in these circumstances would have been dissuaded from making or supporting a charge of harassment. Therefore, the Court finds that Market Regulation's actions in charging and reprimanding Holladay are sufficiently material adverse to support Holladay's retaliation claims against CME defendants.

CME defendants next challenge whether Holladay establishes a causal connection between her protected activity and the alleged adverse action. To establish causation, Holladay must present either direct evidence or a "convincing mosaic" of circumstantial evidence permitting an inference that CME defendants acted because of Holladay's protected activity. *Pesek v. Caterpillar Inc.*, 10 C 3546, 2012 WL 3069773 at *5 (N.D. Ill. July 27, 2012). A plaintiff may do so by showing "1) suspicious timing, ambiguous statements oral or written, … and other bits and pieces from which an inference of retaliatory intent might be drawn; 2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently; and/or 3) evidence that the employer offered a pretexual reason for an adverse employment action." *Id*. (*quoting Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012)) (internal quotations omitted). Notwithstanding this convincing mosaic, Title VII retaliation claims – and thus arguably IHRA retaliation claims – must be proved according to traditional principles of but-for causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Holladay argues that the suspicious timing between Holladay's IDHR charge and Market Regulation's actions demonstrates a causal connection. Holladay filed her IDHR charge on January 19, 2011. The parties dispute at what time CME defendants first became aware of the charge, but agree that CME defendants were on notice by February 18. Charges were issued against Holladay on March 29. "In egregious cases, suspicious timing alone might create a triable issue on causation. But it rarely does." *Pesek*, 2012 WL 3069773 at *6 (*quoting Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 390 (7th Cir. 2012).

Holladay also identifies four individuals she argues were similarly situated to her but treated more favorable, including Downs, Piatkowski, Lehman and one individual who allegedly refused to appear at a liability hearing but was not charged or reprimanded. (See Dkt. #100, Pl.'s

8

Resp. Br., pp. 12-13.) However, none of the individuals are "directly comparable in all material respects" to Holladay. *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2003).

Finally, Holladay argues that her in-person interview was not necessary to the Downs' investigation and asserts that the charge and reprimand issued against her were merely pretext for retaliation against her for filing her IDHR charge. According to Holladay, her proposal to submit answers to written questions in addition to her IDHR charge should have been sufficient to prosecute Downs. Holladay relies on Vrabel's deposition testimony that he recalled two instances in which answers to written questions were permitted in lieu of an in-person interview. CME defendants assert that in those instances the testimony solicited was duplicative of other witnesses' testimony and argue, here, that Holladay was the only person who could speak to Downs' conduct towards her. Moreover, CME defendants contend that Holladay's interview was needed in order to assess credibility, and to determine whether Downs had engaged in actionable conduct beyond what was captured in the video.

The Court finds that Holladay fails to establish a basis on which a jury could conclude that there was a causal link between her protected activity and CME defendants' adverse action. Moreover, even if Holladay could establish causation, the Court finds that CME defendants have shown a legitimate non-retaliatory reason for its actions, namely, that Holladay violated Rule 432.L1. Holladay does not dispute that, pursuant to Rule 432.L1, it is an offense to fail to appear for an interview with Market Regulation. Holladay maintains, however, that failure to appear for interviews does not constitute an offense *in practice* and points again to a single incident wherein an individual allegedly refused an interview and was not sanctioned. Indeed, Vrabel testified at his deposition that he could recall only one individual who refused an interview. That individual did not file an IDHR charge nor was he sanctioned in any way for his refusal. Holladay, however, offers no evidence which would suggest the reasons articulated by CME defendants for requesting her in-person interview and deciding to charge and ultimately reprimand her for failing to comply with their request were a "deliberate falsehood" to mask unlawful retaliation. *See Hall v. City of Aurora*, 06 C 6011, 2008 WL 4877156 (N.D. Ill. June 13, 2008) ("pretext is a 'deliberate falsehood' and the focus is on whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered).

In total, the Court finds that Holladay fails to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Conclusory allegations and unsupported

speculation will not defeat a motion for summary judgment. *Hoosier v. Greenwood Hospitality Mgmt*. LLC, 11 C 3816, 2014 WL 1245112 at *1 (N.D. Ill. Mar. 26, 2014) (*citing Thomas v. Christ Hosp. and Medical Center*, 328 F.3d 890, 893–94 (7th Cir. 2003)). Accordingly, CME defendants' motion for summary judgment as to Count IV is granted.

2. *Downs' Motion for Summary Judgment*

Holladay alleges claims for sexual harassment, sex discrimination and retaliation pursuant to Title VII and IHRA, as well assault and battery, and intentional infliction of emotional distress against Downs and MWD Trading, Inc.[3] Downs moves for summary on Holladay's claims arguing that Holladay fails to show that Downs' conduct was unwelcome or uninvited.

In support, Downs cites to a slew of cases from various jurisdictions and posits no less than fifty-six questions to Holladay in an attempt to highlight that Holladay's actions and reactions to Downs' conduct show that his conduct could not possibly be unwelcome. (*See* Dkt. #93-1, Downs Memo. in Supp. of Mot. for Summ. J., pp. 2-12.) Specifically, Downs suggests that certain actions, including that Holladay allegedly returned to work for Downs several times after resigning or being laid off, had consensual sex with Downs and another co-worker, recruited her sister to work for Downs, gave Downs backrubs on the trading floor, stayed overnight at Downs' house, vacationed with Downs, associated with Downs outside of work, never filed a formal complaint with CME Group, borrowed money from Downs and generally encouraged Downs' behavior, conclusively show that Downs' conduct was not unwelcome. (*Id*. at pp. 6-12.) Downs also argues that Holladay's assertion that she suffered humiliation and embarrassment fails to establish she suffered severe emotional distress.

In response, Holladay argues that her employment was conditioned on submitting to sexual demands, that she complained about the sexual harassment, rejected Downs' advances and found his conduct offensive. Holladay maintains that her single sexual act with Downs does not show that Downs' conduct throughout her employment was welcomed and invited. Holladay further asserts that she believed she would be fired if she did not reciprocate Downs' advances or flirt with him. Holladay urges the Court to find that the question of whether Downs' conduct was indeed unwelcome is really a credibility determination that should be put to the trier of fact.

---

[3] In a footnote in his opening brief, Downs asserts: "There is no legal entity MWD [Trading], Inc. It is the name of Downs' business, solely owned by him, and exists as a Bank Account for business purposes." (Dkt. #93-1, p. 1, fn. 1.) Holladay does not address this issue in her response brief. Notably, Downs does not move for dismissal of MWD Trading, Inc. as a named defendant.

10

Holladay contends that a reasonable jury could infer that Holladay suffered extreme emotional distress from Downs' repeated sexual advances throughout the various periods of her employment.

In reply, Downs repeats his barrage of questions to Holladay and expends significant effort to editorialize Holladay's responses to his statement of facts. (Dkt. #106, Downs Reply Br., pp. 2-11.) Finally, Downs maintains that he did not engage in harmful or offensive conduct and argues Holladay fails to properly support her emotional distress claim.

After a thorough review of the parties' briefs, exhibits and voluminous transcripts submitted in support of and in opposition to the instant motion, the Court finds that Downs' motion must be denied. The Court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). It is abundantly clear that Downs and Holladay engaged in questionable behavior in the workplace. However, the only issue that either party has successfully established is that several issues of fact exist which preclude granting summary judgment in Downs' favor on any of Holladay's claims. Indeed, the more than fifty questions posed to Holladay are exactly the kinds of factual questions and credibility determinations best left to a jury. Therefore, Downs' motion is denied.

**Conclusion**

For all the foregoing reasons, CME defendants' motion for summary judgment as to Count IV is granted. Downs' motion for summary judgment as to Counts I- III and VI-VII is respectfully denied.

IT IS SO ORDERED.

_____
Date: September 3, 2014

_____
Sharon Johnson Coleman
United States District Judge